## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**DAVID MANSON,**

      **Petitioner,**

**v.**                                   **Case No. 4:20cv333-TKW/MAF**

**RICKY D. DIXON, Secretary,**
**Florida Department of Corrections,[1]**

      **Respondent.**
_____/

## REPORT AND RECOMMENDATION

On June 24, 2020, Petitioner David Manson, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. On April 22, 2021, Respondent filed an answer, with exhibits. ECF No. 17. Petitioner filed a reply on June 2, 2021. ECF No. 18.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration, the undersigned has determined no evidentiary hearing is required for the disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases. For the reasons stated herein, the pleadings and attachments before the Court show

---

[1] The Clerk of Court shall substitute Ricky D. Dixon as Secretary of the Florida Department of Corrections. Ricky D. Dixon succeeded Mark S. Inch as Secretary for the Department of Corrections and is automatically substituted as Respondent pursuant to Federal Rule of Civil Procedure 25(d).

Petitioner is not entitled to federal habeas relief, and this § 2254 petition should be denied.

## **Procedural Background**

By amended information filed in open court on March 3, 2016, in Leon County Circuit Court Case 2013-CF-1517, the State of Florida charged Petitioner David Manson with sexual battery of a child less than twelve years old by a person eighteen years of age or older, a capital felony, in violation of section 794.011(2)(a), Florida Statutes, involving victim A.B., Petitioner's stepdaughter, and occurring between April 2002 and June 2002.  Ex. A at 12; *see id*. at 11 (initial information, filed October 1, 2013).[2]  Manson proceeded to a jury trial on March 3, 2016, with Judge Terry P. Lewis presiding.  Exs. C-D (trial transcript).  Manson testified in his defense.  Ex. C at 99-139.  The jury found him guilty as charged.  Ex. A at 49; Ex. D at 208-09.  That same day, Judge Lewis adjudicated Manson guilty and sentenced him to life in prison.  Ex. A at 50-58; Ex. D at 209-10 (sentencing transcript).

Manson appealed his judgment and sentence to the First District Court of Appeal (DCA), assigned case number 1D16-1168, and his counsel filed an Initial Brief.  Ex. A at 62; Ex. E.  Manson raised two points:

---

[2]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 17.

I.    The trial court erred reversibly in permitting the impeachment of [Manson] by prior convictions because 1) on direct examination, he correctly stated the number of convictions and did not attempt to mislead the jury, and 2) the State was not permitted to question him about the nature of his prior convictions.

II.    The trial court erred reversibly in overruling [Manson]'s objection to admitting a photo of a scar on the alleged victim on the ground it was unrelated to the crime being tried and could become a feature of the trial.

Ex. E at i.  The State filed an Answer Brief.  Ex. F.  Manson's counsel filed a Reply Brief.  Ex. G.  On May 25, 2017, the First DCA panel, Judges Ray, Makar, and Winsor, affirmed the case without a written opinion.  Ex. H; Manson v. State, 226 So. 3d 819 (Fla. 1st DCA 2017).  The mandate issued June 12, 2017.  Ex. H.

On October 4, 2017, Manson filed a pro se petition for writ of habeas corpus in the First DCA.  Ex. I.  On November 9, 2017, the First DCA panel, Judges Winokur, Jay, and Winsor, denied relief on the merits, without discussion.  Ex. J.  The First DCA denied Manson's motions for rehearing by order on January 9, 2018.  Ex. K.

On May 15, 2018, Manson filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  Ex. L at 3-36.  On November 8, 2018, the state post-conviction trial court, Judge James C. Hankinson, held an evidentiary hearing on the Rule 3.850 motion, during

which Manson and his trial counsel, Justin Ward, testified. *Id*. at 397-442. At the conclusion of the hearing, Judge Hankinson denied the Rule 3.850 motion, stating reasons on the record. *Id*. at 435-40. The judge rendered a written order denying post-conviction relief that same day. *Id*. at 355.

Manson appealed to the First DCA, assigned case number 1D18-5077, and he filed a pro se Initial Brief. Ex. M. The State filed an answer brief. Ex. N. Manson filed a reply. Ex. O. On March 26, 2020, the First DCA panel, Judges Wolf, Roberts, and Rowe, per curiam affirmed the case without a written opinion. Ex. Q; Manson v. State, 294 So. 3d 854 (Fla. 1st DCA 2020) (table). The mandate issued on May 29, 2020, following the court's denial of Manson's motion for rehearing. Exs. P, Q. Manson sought discretionary review in the Florida Supreme Court, but that court dismissed the case on July 1, 2020, explaining it lacks jurisdiction to review an unelaborated decision issued without an opinion or explanation. Ex. R.

As indicated above, Manson filed a § 2254 petition in this Court on June 24, 2020. ECF No. 1. He raises eleven grounds, all alleging ineffective assistance of counsel (IAC):

(1) **IAC – Speedy Trial**:  Trial counsel "failed to give notice that Manson's speedy trial period had expired and [he] was prejudiced because the State could not have brought him to trial within the recapture period." *Id*. at 9.

(2) **IAC – Defective Information**:  Trial counsel did not file a motion to dismiss based on the "fundamentally flawed information by Manson's name being 'omitted' from charging body." *Id*. at 10.

(3) **IAC – Defective Information**:  Trial counsel did not file a motion to dismiss based the "fundamentally flawed information where the county and state are 'omitted' from charging body." *Id*.

(4) **IAC – Amended Information**:  Trial counsel did not "object to amended information" and did not move "for bill of particulars to which amended date broadens instead of narrowing." *Id*. at 11.

(5) **IAC – Jury Composition**:  Trial counsel did not object to "an improper jury composition," thereby denying "Manson's constitutional rights." *Id*. at 12.

(6) **IAC – Similar Fact Evidence**:  Trial counsel did not "object to similar fact evidence for which there were no factual findings and allow[ed] similar fact evidence to become [a] feature of the trial." *Id*. at 13.

(7) **IAC – Brady Violation**:  Trial counsel failed to "recognize a 'Brady Violation,'" specifically "[a] photograph that was taken a day before trial [that] was introduced as evidence creating a 'structural defect,' depriving Manson of a fair trial." *Id*. at 14.

(8) **IAC – Impeachment**:  Trial counsel failed "to properly impeach [the] State's star witness" by "exploit[ing] all inconsistencies" in the witness's testimony, "depriving Manson [of] a fair trial." *Id*. at 15.

(9) **IAC – Judgment of Acquittal**:  Trial counsel failed "to motion for judgment of acquittal challenging the sufficiency of the

evidence," thereby violating "Manson's constitutional right to a fair trial by conceding to the State that failed to prove a sexual battery occurred because the essential element of 'injures the sexual organ' was never alleged." *Id*. at 15-16.

(10) **IAC – Jury Instruction**:  Trial counsel failed "to object to the trial court's instruction," because when "[t]he judge erroneously instructs a jury that it may not request to have testimony read back," this "is 'error' that constitutes a 'structural defect' that prejudiced Manson by not being able to determine the effect without speculation." *Id*. at 16.

(11) **IAC – Giglio Violation**:  Trial counsel failed "to object to perjured testimony also known as 'Giglio Violation,'" and "[p]rejudice is found where [the] prosecution leads [the] star witness throughout testimony of farfetched fabrication of alleged acts that are not possible." *Id*. at 17.

Respondent filed an answer, with exhibits.  ECF No. 17.  Manson has filed a reply.  ECF No. 18.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See, e.g.,* <u>Cullen v. Pinholster</u>, 563 U.S. 170, 180-83 (2011); <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287-88 (11th Cir. 2011).  "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" <u>Cullen</u>, 563 U.S. at 181 (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011), and <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Id.*

For IAC claims, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

<u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."  *Id.* at 688.  To demonstrate

prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.*

The Strickland test applies to IAC claims arising out of the plea process. Hill v. Lockhart, 474 U.S. 52, 57-58 (1985). When a defendant has entered a plea while represented by counsel, as here, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id*. at 56 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). "[A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and

intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.'" *Id.* at 56-57 (quoting Tollett v. Henderson, 411 U.S. 258 (1973)).  That a plea is one of nolo contendere, as here, rather than guilty, does not warrant a different analysis for purposes of federal habeas corpus.  *See* North Carolina v. Alford, 400 U.S. 25, 35-37 (1970); *see also* Florida v. Royer, 460 U.S. 491, 495 n. 5 (1983) (explaining that "[u]nder Florida law, a plea of nolo contendere is equivalent to a plea of guilty").

## <u>Ground 1</u>:  IAC – Speedy Trial

In his first ground, Petitioner Manson asserts defense counsel provided ineffective assistance by "fail[ing] to file a motion for discharge based on [his] constitutional right to speedy trial."  ECF No. 1 at 9.  As Respondent points out, in state court, Manson raised a claim of IAC for "waiving [his] right to speedy trial."  Ex. L at 17; *see* ECF No. 17 at 18.  If this is the claim Manson wishes to raise here, then he exhausted it by raising it in state court.  As Respondent also indicates, the speedy trial right to which Manson refers is that found in Florida Rule of Criminal Procedure 3.191.  ECF No. 17 at 18.

At the conclusion of the evidentiary hearing, the state post-conviction trial court denied the claim, making the following findings on the record:

> Ground 1 alleges ineffective assistance of counsel for waiving the defendant's speedy trial rights.  I don't find there's been any

> ineffective assistance of counsel proven.  I accept Mr. Ward's testimony, I reject Mr. Manson's testimony.  Mr. Ward had specific conver – recollection of conversation with Mr. Manson about continuing the trial.  Even aside from that, that's a strategic decision for the attorney, not a decision for the defendant.  It was, he needed to do further discovery in the case.  I don't find there's been any ineffective assistance of counsel shown; or any prejudice shown.

Ex. L at 435.  On appeal, the First DCA affirmed without a written opinion. This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision.  *See* Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); Wright v. Sec'y, Dep't of Corr., 278 F.3d 1245, 1254-55 (11th Cir. 2002).  A review of the record supports the state courts' determination.  *See* Wilson v. Sellers, -- U.S. --, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same reasoning.").

In particular, in denying this claim, the state post-conviction trial court judge accepted the testimony of Manson's trial counsel, Justin Ward, over that of Manson regarding the decision to continue the trial.  The state post-

conviction trial court judge sits as the fact-finder and determines witness credibility in Rule 3.850 proceedings. *See, e.g.*, <u>Consalvo v. Sec'y for Dep't of Corr.</u>, 664 F.3d 842, 845 (11th Cir. 2011) ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review."); <u>Smith v. State</u>, 697 So. 2d 991, 992 (Fla. 4th DCA 1997); Fla. R. Crim. P. 3.850(d). "Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor was observed by the state court, but not by them.'" <u>Consalvo</u>, 664 F.3d at 845 (quoting <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434 (1983)).

The record supports the state post-conviction court's conclusion that counsel's waiver of speedy trial was not unreasonable, and constituted a strategic decision, given the circumstances of the case. At the evidentiary hearing, Ward testified that he and Manson "had a conversation on January the 29th of 2014, about the need for a continuance to take additional depositions," and Manson "said [he was] okay with it." Ex. L at 400. On cross, Ward further explained:

> Within my notes I referred earlier to a conversation that we had in January of 2014. My notes reflect that I discussed a continuance with him, to take the additional depositions; and I wrote that he's okay with a continuance. As to continuances beyond then, I did speak with him on May the 8th about a trial continuance. I don't recall what the continuance was for, or who asked for it. I didn't note that he had any dispute about that.

*Id*. at 411.  Ward explained that Manson was out on bond and living in North

Carolina, while the case was pending trial.  *Id*.  Ward testified:

> Q  When your clients are adamant that you not continue the trial, or allow it to be continued; is that something that you would usually make a note of?
>
> A  Yes.
>
> Q  Did – do you have any memories of him wanting you to demand a speedy trial, or not waive his right?
>
> A  No, I don't.  Actually, I do see another note from August the 18th of 2014, where apparently Ms. Cappleman was handling the case.  And she asked me if I would object to a continuance.  I spoke to Mr. Manson that day, and he has – said he had no problem with it.  There is an additional discussion on January the 14th about a continuance.  At that point, that was because of the prosecutor's illness.

*Id*. at 411-12.  *See, e.g.*, Gregory v. State, 224 So. 3d 719, 731 (Fla. 2017)

("'[S]trategic decisions do not constitute ineffective assistance of counsel if

alternative courses have been considered and rejected and counsel's

decision was reasonable under the norms of professional conduct.'

Occhicone v. State, 768 So. 2d 1037, 1048 (Fla. 2000).").

Petitioner Manson has not shown that the state court's rejection of this

ground involved an unreasonable application of clearly established federal

law or that it was based on an unreasonable determination of the facts.  *See*

28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### Grounds 2 & 3:  IAC – Defective Information

In his second and third grounds, Petitioner Manson asserts his trial counsel provided ineffective assistance by not challenging the allegedly defective information based on, in Ground 2, "Manson's name being 'omitted' from the charging body" and, in Ground 3, "the county and state [being] 'omitted' from the charging body."  ECF No. 1 at 10.  As Respondent points out, in the second and third claims of his Rule 3.850 motion, Manson alleged IAC for "failing to investigate defective indictment," with the second claim asserting his "name is not in accusatory body," and, in the third claim, "in which County and State are not alleged."  Ex. L at 19-20; *see* ECF No. 17 at 25-26.  Assuming these are the claims Manson wishes to raise here, then he has exhausted them in state court.

At the conclusion of the evidentiary hearing, the state post-conviction trial court denied the claim, making the following findings on the record:

> Ground 2, failure to object to defective indictment. Ground 2 relates to the name, Ground 3 relates to the county and state.  None of those show a defect in the indictment that is actionable.  There were some old cases that got in to confuse things about the name not in the body.  By and large, those were dealing with cases where there were multiple co-defendants and multiple charges, and it got a little confusing.  Those cases have since been clarified in Desmond v. State, 576 So. 2d 743, which is a Florida Second DCA 1991.  And in Rigell v. State, . . . 782 So. 2d 440, Florida Fourth DCA, 2001.

>So we do not have a defective indictment – and he keeps saying indictment, now I'm saying indictment – it was an information.  There was not a defective information as to either of the grounds.  Assuming there was, it was a routine strategic decision not to object to any technical objection.  Any technical objection would have been easily cured, therefore the defendant is not prejudiced nor is it unreasonable to decline to make such technical objections.  So neither Grounds 2 nor 3 are proven.

Ex. L at 436.  On appeal, the First DCA affirmed the post-conviction court's ruling without an opinion, an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d).  Ex. 23; *see* <u>Richter</u>, 562 U.S. at 99.  The record supports the state courts' determination.  *See* <u>Wilson</u>, 138 S. Ct. at 1192.

In particular, at the evidentiary hearing, defense counsel Ward testified the information had Manson's name on it and "it was clear what the allegations were and what we were dealing with."  Ex. L at 400-01.  He further testified that "the state and county were both included at the very top of the information."  *Id*. at 401; *see id*. at 413

Indeed, the record contains a copy of the amended information used for trial, filed in open court on March 3, 2016.  Ex. A at 12.  The document identifies the Petitioner, David K. Manson, as the Defendant in the case and includes, in the caption, his name, race and sex, date of birth, and Social Security number.  *Id*.  The amended information charges "the above-named defendant" with one count of sexual battery on a child, A.L.B., under 12 years of age by a defendant 18 years of age or older, a capital felony, contrary to

section 794.011(2)(a), Florida Statutes (2001), that occurred in Leon County, Florida, "[o]n or about and between April, 2002 and June, 2002, . . . by putting his penis in her mouth." *Id.* This information thus identified Manson as the defendant, set forth the charged crime and essential facts, cited the statute he allegedly violated, and was not "so vague, indistinct, and indefinite as to mislead the accused and embarrass him ... in the preparation of a defense or expose the accused after conviction or acquittal to substantial danger of a new prosecution for the same offense." Fla. R. Crim. P. 3.140(o); *see* Carbajal v. State, 75 So. 3d 258, 262-63 (Fla. 2011) (citing Rule 3.140(o) and explaining that "while a charging instrument is essential to invoke the circuit court's subject matter jurisdiction, 'defects in charging documents are not always fundamental where the omitted matter is not essential, where the actual notice provided is sufficient, and were all the elements of the crime in question are proved at trial'" (quoting State v. Gray, 435 So. 2d 816, 818 (Fla. 1983))). *See also, e.g.*, Heath v. Jones, 863 F.2d 815, 821 (11th Cir. 1989) ("The sufficiency of a state indictment is an issue on federal habeas corpus only if the indictment was so deficient that the convicting court was deprived of jurisdiction. That is not the case presented here. An examination of the indictment ... shows that it incorporated the elements of the offense of armed robbery, named the complaining witness and sufficiently described

the circumstances of the alleged robbery. The indictment was not fatally defective, for it adequately informed Heath of the charge he was called upon to defend, and the state trial court was not deprived of jurisdiction.").

Ward also testified at the evidentiary hearing that even if the charging information did have a defect, "I'm sure that Ms. Ray, or whatever prosecutor was handling the case, would have properly corrected the information, and filed a legal – legally sufficient document."  Ex. L at 413.  Defense counsel cannot be ineffective for not raising a futile issue.  *See, e.g.*, Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990) ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit."); Maxwell v. Wainwright, 490 So. 2d 927, 932 (Fla. 1986) ("[W]e cannot find ineffectiveness based on lack of objection or argument when counsel could reasonably have decided that such objection or argument would have been futile . . . .").

Petitioner Manson has not shown that the state courts' rejection of these grounds involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  These grounds should be denied.

## <u>Ground 4</u>:  IAC – Amended Information

In his fourth ground, Petitioner Manson asserts his trial counsel provided ineffective assistance because counsel did not "object to amended

information" and did not move "for bill of particulars to which amended date broadens instead of narrowing." ECF No. 1 at 11. Manson exhausted this claim by raising it as the fourth ground in his Rule 3.850 motion. Ex. L at 21-22.

At the conclusion of the evidentiary hearing, the state post-conviction trial court denied the claim, making the following findings on the record:

> Ground 4, failure to ask for a bill of particulars. The defense was aware of what they were charged with, there was no basis for asking for a bill of particulars. Had one been requested, in all likelihood it would have been denied. They knew what the allegations were against him, and there was no reason to request a bill of particulars. There was neither ineffective assistance of counsel or prejudice to the defense.

Ex. L at 436-37. On appeal, the First DCA affirmed the post-conviction court's ruling without an opinion, an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d). Ex. 23; *see* <u>Richter</u>, 562 U.S. at 99. The record supports the state courts' determination. *See* <u>Wilson</u>, 138 S. Ct. at 1192.

In particular, at the evidentiary hearing, defense counsel Ward testified:

> Shortly before trial, there was an amended information that was filed, that increased the dates that were being alleged. I didn't see any prejudice in that, and the – we were already aware that we weren't clear about exactly what the dates were. And the – the case law on that issue is difficult for the defense, because as I understand it, the State only has to specify as well as possible

> a date range, when a specific date cannot be ascertained.  So it
> makes it more difficult for us, but I don't think that I had any viable
> objection to that amendment.

Ex. L at 402.  He further testified that he did not believe it was prejudicial to

the defense because the defense theory centered on arguing the victim was

not being truthful:

> Because it was unclear exactly, what date the offense was
> alleged to have occurred on in the first place.  If we were in a
> situation where we were asserting an alibi defense, yeah, we'd
> have a different situation.  But our argument was that, the victim
> in the case was just being dishonest about the allegations,
> because she disliked [Petitioner].

*Id*.  On cross, Ward explained that it was "always my understanding, that we

didn't know it, the exact date" and the amendment of the information did not

cause him to not be ready for trial.  *Id*. at 413.

Petitioner Manson has not shown that the state court's rejection of this

ground involved an unreasonable application of clearly established federal

law or that it was based on an unreasonable determination of the facts.  *See*

28 U.S.C. § 2254(d)(1)-(2).  Accordingly, this ground should be denied.

## <u>Ground 5</u>:  IAC – Jury Composition

In his fourth ground, Petitioner Manson asserts his trial counsel

provided ineffective assistance by not objecting to "an improper jury

composition," thereby denying "Manson's constitutional rights."  ECF No. 1

at 12.  Manson exhausted this ground by raising it as the fourth claim in his

Rule 3.850 motion.  Ex. L at 22-24.  Specifically, in that motion, Manson took

issue with defense counsel's failure to get Lara Gandiana off the jury

because of "her responses to questioning" in which she had stated that she

had two young children, that "a close friend's daughter had been a victim of

sexual assault," and that her "neighbor was a sexual offender."  *Id*. at 22-23.

At the conclusion of the evidentiary hearing, the state post-conviction

trial court denied the claim, making the following findings on the record:

> Ground 5, failure to object to the jury composition.  I don't
> find that there's been anything shown here of ineffective
> assistance of counsel.   Jury selection is, again, a strategy
> decision of the counsel.  Mr. Ward did his best to pick a jury that
> he thought was favorable to the defendant.  There's been nothing
> shown here that he did anything unreasonable, as to Mr. – as to
> Mr. Gandiana . . . .   He doesn't have a specific recollection of
> discussing the juries – jurors with Mr. Manson, but that would be
> the normal practice.   I don't find that there was anything
> unreasonable in Mr. Ward's jury selection practices; nor was the
> defendant prejudiced.

Ex. L at 437.  On appeal, the First DCA affirmed the post-conviction court's

ruling without an opinion, an adjudication on the merits entitled to deference

under 28 U.S.C. § 2254(d).  Ex. 23; *see* Richter, 562 U.S. at 99.  The record

supports the state courts' determination.  *See* Wilson, 138 S. Ct. at 1192.

In particular, at the evidentiary hearing, defense counsel Ward testified

regarding the juror:

> There were issues about her familiarity with someone, I
> believe it was a neighbor, whose child had been molested.  But

we did address those issues.  In addition to her having a couple of male children, just seeing if she felt that there was any possibility that might render her inappropriate for this case.
    . . . .

    If I recall correctly, she had two male children.  Let me refer to my notes.  Yeah, she had two boys, ages thirteen and ten.  Well, I have in my notes, I specifically wrote out, fair and that she thought she would be fine; despite her friend's daughter being a victim.

Ex. L at 403.  On cross, Ward testified:

Q  Looking at Ground 5, the defense asked you about Ms. Gandiana.  In the jury transcript, were you able to review where she said that her daughter – I'm sorry, her friend's daughter, had been sexually assaulted about seven years before?

A  Yes.

Q  And what did she say about how that may affect her ability to be fair and impartial?

A  She didn't feel it would have any influence on her.

Q  Did she indicate that she had any concerns about being a juror on this case?

A  Not that I recall.

Q  Do you have any notes from jury selection, or independent memories, about the defendant maybe telling you he did not want her on the panel?

A  No.

Ex. L at 413-14.  The transcript from the jury selection proceeding confirms

Ward's testimony.  Ex. B at 23, 48, 50-51, 53, 70-71.

Ward further testified that he did not "have a specific recollection" of what he and Petitioner had discussed regarding this juror, "[b]ut typically with each juror that we select, I'll consult with my client also to say, hey is this particular juror okay with you." Ex. L at 403-04. He testified, "I don't specifically remember that, but knowing how I regularly practice, we probably would have had that discussion with Ms. Giandiana as well." *Id*. at 404. Ward pointed out that "we had additional challenges left over, and we could have struck her if we didn't like it." *Id*.; *see* Ex. B at 70-71. *See, e.g.*, Gregory, 224 So. 3d at 731 ("'[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct.' Occhicone v. State, 768 So. 2d 1037, 1048 (Fla. 2000).").

Petitioner Manson has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Accordingly, this ground should be denied.

### Ground 6:  IAC – Similar Fact Evidence

In his sixth ground, Petitioner Manson asserts his trial counsel provided ineffective assistance "for failing to object to similar fact evidence for which

there were no factual findings and allowing similar fact evidence to become

[a] feature of the trial."  ECF No. 1 at 13.  Manson exhausted this claim by

raising it as the sixth ground in his Rule 3.850 motion.  Ex. L at 24-26.

At the conclusion of the evidentiary hearing, the state post-conviction

trial court denied the claim, making the following findings on the record:

> The similar-fact claim, I accept Mr. Ward's testimony that he made a strategic decision to allow the similar-fact evidence in.  Frankly, I – I've never understood how similar-fact evidence that is by the same victim; I never have understood why the courts treat that the same as an independent victim on a different incident.  Obviously, when you have a separate victim on a different incident, it is highly prejudicial to the defense.  But in this case, it all boiled down to whether the jury believed the victim or not.

> I don't think it was unreasonable on Mr. Ward's part to say – to allow the other incidents in.  He could use it to show that it was bizarre, and would actually work to impeach the credibility of the victim, as opposed to assisting them.  Anyway, I do not find that – I understand that the law is, that it is similar-fact evidence.  It's just a whole different ballgame when the only issue is the credibility of the victim.  Either they believe her or they do not.  It really doesn't matter whether it was one, two, three or four instances.  But anyway, I understand that's not the law, and I'm not trying to change the law.  But I don't think it was unreasonable for Mr. Ward to make that strategy decision; nor do I find that the defendant was prejudiced by any alleged ineffective assistance of counsel.

Ex. L at 437-38.  On appeal, the First DCA affirmed the post-conviction

court's ruling without an opinion, an adjudication on the merits entitled to

deference under 28 U.S.C. § 2254(d).  Ex. 23; *see* Richter, 562 U.S. at 99.

The record supports the state courts' determination.  *See* <u>Wilson</u>, 138 S. Ct. at 1192.

In particular, at the evidentiary hearing, defense counsel Ward testified he planned to bring up the similar allegations by the victim if the State did not as part of the defense strategy to discredit the victim:

> The victim made similar allegations, both here in Tallahassee in addition to, I believe it was North Carolina and Colorado.  My approach to all of those, and I believe we discussed this, was even if the State didn't bring those other allegations up, we were going to bring it up; to argue that this is so bizarre that it's incredible, that this would have been persistent for so many years.  And especially the degree to which she said that – that it's not just sexual, but violent also.  I – I thought she would lose credibility to say that yes, he's doing this over and over and over, and I've never thought it would be important to say anything.  Obviously, the jury disagreed with me, but that was the approach to it.  I'm fairly confident that we did discuss that.

Ex. L at 404-05.  On cross, Ward testified that, although he did not have any notes specifically regarding the similar-fact evidence, he does "have notes indicating that we had these discussions about our trial strategy and how we would go forward."  Ex. L at 414.  He testified, "I don't have any indication that Mr. Manson disagreed within any of our strategy."  *Id*. at 414-15.  He did not have any notes or independent memory of Petitioner asking him to file a motion in limine.  *Id*. at 415.

Given the record, it was not unreasonable for the state court to conclude that defense counsel's performance was not deficient.   Ward

evaluated the evidence and determined the better strategy would be to use it to challenge the victim's credibility, and he discussed this strategy with Manson.  "[E]vidence that counsel's conduct was part of a deliberate, tactical strategy that the defendant understood and approved almost always precludes the establishment" of deficient performance.  <u>Henry v. State</u>, 948 So. 2d 609, 617 (Fla. 2006).  "[T]hat this defense strategy was ultimately unsuccessful with the jury does not render counsel's performance deficient." <u>Heath v. State</u>, 3 So. 3d 1017, 1029 (Fla. 2009).  *See also, e.g.*, <u>Gregory</u>, 224 So. 3d at 731 ("'[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct.' <u>Occhicone v. State</u>, 768 So. 2d 1037, 1048 (Fla. 2000).").

Petitioner Manson has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### Ground 7:  IAC – <u>Brady</u> Violation

In his seventh ground, Petitioner Manson asserts his trial counsel provided ineffective assistance "for failing to recognize a 'Brady violation,'"

pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), specifically "[a] photograph that was taken a day before trial [which] was introduced as evidence creating a 'structural defect' depriving Manson of a fair trial." ECF No. 1 at 14. Manson exhausted this claim by raising it as the fourth ground in his Rule 3.850 motion. Ex. L at 26-28.

At the conclusion of the evidentiary hearing, the state post-conviction trial court denied the claim, making the following findings on the record:

> Ground 7 relates to the photo of the victim. Mr. Ward made a tactical decision to allow the photo in, even though it did not relate to the specific charges before the Court. He did object, and that's in Volume 1, Page 81, to the photo becoming a feature of the trial; or that incident becoming a feature of the trial. Judge Lewis overruled that objection, so to the extent he attempted to make sure it was not a feature, he did what he could.

> However, he did use that photo to impeach the victim. He called two witnesses, Shandreka . . . McDonald, this is Volume 2, and at Page 152 and 153. Ms. McDonald testified contrary to the victim's testimony, about the victim. Similar testimony was elicited by the defense from [redacted] again Volume 2, Page 159 to 160. I think it was certainly a reasonable strategy to try to show that the victim was lying. If he could show she was lying about the injury to her lip, the jury was less likely to believe her as to the allegations against the defendant.

> The defendant says, well his attorney was ineffective because he was convicted. That's not the standard we use here. The standard is, whether it was reasonable strategy. I find that it was. Therefore, I don't find that there's any ineffective assistance of counsel shown as to the photo of the victim; nor any prejudice to the defendant.

Ex. L at 438-39. On appeal, the First DCA affirmed the post-conviction

court's decision without an opinion, an adjudication on the merits entitled to

deference under 28 U.S.C. § 2254(d).  Ex. 23; *see* Richter, 562 U.S. at 99.

The record supports the state courts' determination.  *See* Wilson, 138 S. Ct.

at 1192.

In particular, at the evidentiary hearing, Mr. Ward testified regarding

the photograph:

> I don't recall whether the photo was in discovery or not.  I do
> believe that I was aware of it.  And we were prepared to challenge
> that, by putting on evidence that the injury that she said was from
> you; was actually from her, I believe, running into a wall.  We
> called her aunt to testify to that fact.  And I believe there was also
> one more child that testified to that for us also.  I don't recall that
> witness's name, though.

Ex. L at 406.  Ward further testified that he would not object in this instance:

> [G]iven that we were prepared to deal with it, with witnesses that
> would say this came from something else; no, I wouldn't object.
> If anything, I think it just harms her credibility, when we have
> witnesses saying, no she's lying about how she received that
> injury.  So yeah, I was fine with the State putting that on.  I think
> it actually helped us.
>
> . . . .
>
> Right.  If we can show – create that doubt in jurors' minds.  If
> they're questioning the credibility of the victim, if they question
> how she actually received that injury; it also makes it more likely
> that she would – they would question whether she's being truthful
> about the sexual allegations.

*Id*. at 406-07; *see id*. at 415-16.  Ward also testified he "wouldn't characterize

it as a Brady violation."  *Id*. at 407.

As the state post-conviction court found, Ward did raise a "feature objection" to the photo.  Ex. C at 81.  As the court also found, Ward's decision to use the photo, and testimony regarding it, to challenge the victim's credibility constituted a reasonable trial strategy.  *See, e.g.*, Gregory, 224 So. 3d at 731 ("'[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct.' Occhicone v. State, 768 So. 2d 1037, 1048 (Fla. 2000).").  See also, e.g., Waters v. Thomas, 46 F.3d 1506, 1518-19 (11th Cir.1995) (en banc) ("We cannot, and will not, second guess such [strategic] decisions" that "trial counsel are called upon to make."); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 ("[C]onsidering all the circumstances, we give great deference to choices dictated by reasonable strategy.")

Petitioner Manson has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  Accordingly, this ground should be denied.

### Ground 8:  IAC – Impeachment

In his eighth ground, Petitioner Manson asserts his trial counsel provided ineffective assistance because counsel did not "properly impeach

[the] State's star witness," by "exploit[ing] all inconsistencies in State's star witness testimony[,] depriving Manson a fair trial."  ECF No. 1 at 15.  Manson exhausted this claim by raising it as the eighth ground in his Rule 3.850 motion.  Ex. L at 28-30.

At the conclusion of the evidentiary hearing, the state post-conviction trial court denied the claim, making the following findings on the record:

> Ground 8, failure to properly impeach the State witness. I've reviewed the testimony, I don't find that there was any unreasonable failure to impeach the State's witness; particularly in light of what I just discussed on Ground 7, where he called witnesses to show she was being untruthful about some part of her testimony.  He also impeached her as to a prior inconsistent statement in the deposition.  That's at Volume 1, Page 90, he impeached her with a prior inconsistent statement from the deposition.  I don't find there's been any ineffective assistance of counsel, nor prejudice.

Ex. L at 439-40.   On appeal, the First DCA affirmed the post-conviction court's ruling without an opinion, an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d).  Ex. 23; *see* Richter, 562 U.S. at 99. The record supports the state courts' determination.  *See* Wilson, 138 S. Ct. at 1192.

In particular, the trial transcript reflects that Manson's attorney cross-examined the State's witness, A.B.  Ex. C at 89-94.  As the state post-conviction trial court judge found, Manson's attorney impeached A.B. as to a prior inconsistent statement in her deposition.  *Id*. at 90.

In addition, at the Rule 3.850 evidentiary hearing, defense counsel

Ward testified:

> Q  How did you fail to properly impeach the State's witness?
>
> A  I haven't reviewed the transcript of the cross examination, but I – it's not uncommon that when a person testifies at different times, that different details come in.  And we can bring up the fact that, hey you didn't say this specific thing to law enforcement, or whoever else at some particular time.  But when – if it's just nitty gritty stuff, I think that we lose credibility with the jurors if we're grasping for straws.  Saying, you said you know, brown versus tan sort of thing.
>
> Q  So you believe impeaching – or trying to impeach the only alleged witness in my case, that was petty to try to impeach her?
>
> A  It depends on what kind of impeachment.  If it's something that goes directly toward the allegation.  You know, if she – if she completely changes what she alleged that you did, then yeah, that's something that we strike on.  But if it's what circumstances surround her deciding to actually make the allegations, I think that's less important.  One thing that I think is always important with the jury is that, yes we do need to make objections in some places.  But there's other material that may be objectionable, but its not necessarily in our best interests to make the objection.  One, is because it may not make a difference to the jury; two, it may actually help us.  And three, I suspect that jurors get critical of lawyers who seem to be objecting too much.  So among all those factors, there may be some objectionable items that I decided not to object to.

Ex. L at 408-09.  On cross, Ward's testimony indicates that he used his

judgment in deciding what points with which to take issue:

> Q  Moving on to Ground 8, in the defendant – or the defendant asked you about impeachment of the victim.  In the defendant's motion he mentioned a statement about her seeing her mother

from the bedroom window.  The defendant comes in and assaults her and attacks her.  And then she's later taken downstairs in the apartment building, to a neighbor's apartment.  Did you believe that those statements were inconsistent with each other, and something that was ripe for impeachment?

A  No.

Q  Why not?

A  The victim says that she looked out her window, and she saw her mother running away.  I – I don't see what's the issue there.

Q   Okay.   Does that mean that she couldn't have gone downstairs to the neighbor's apartment?

A  No.

Q   The defendant asked you today, about a video that was mentioned in trial, as the reason that she came forward.  Had she previously disclosed to you – to you that the video was something that caused her to finally come forward and tell what happened to her?

A  Yes, we discussed it in her deposition.

Q  Okay.  So despite the – it not being in the police report, you were aware of that, and she had prior – I'm sorry, she had disclosed that prior to trial?

A  Yes.

Q  Did you think if you had tried to impeach her on that somehow, about how she didn't tell the police that, that that would get very far?

A  No.

Q  And why not?

> A  She neglected to mention to police a – a detail that I don't think is that important.  I think that to make an issue out of that, would appear that we're grasping for straws.  And I would fear that we would lose credibility with the jury.

Ex. L at 416-17.  Given the record, it was not unreasonable for the state court to conclude that defense counsel's performance was not deficient.  *See, e.g.*, Kessler v. Cline, 335 F. App'x 768, 770 (10th Cir. 2009) ("We also reject Kessler's assertion that counsel was ineffective at trial for failing to cross-examine the victim about prior inconsistent testimony.  The record shows that trial counsel in fact questioned the victim about certain prior statements . . . .  In any event, the manner in which counsel cross-examine a particular witness is a strategic choice and therefore 'virtually unchallengeable.'" (quoting Strickland, 466 U.S. at 690)).

Petitioner Manson has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d)(1)-(2).  Accordingly, this ground should be denied.

### Ground 9:  IAC – Judgment of Acquittal

In his ninth ground, Petitioner Manson asserts his trial counsel provided ineffective assistance by "failing to motion for judgment of acquittal challenging the sufficiency of the evidence" and "[d]efense counsel violated Manson's constitutional right to a fair trial by conceding to the State that failed

to prove a sexual battery occurred because the essential element of 'injures the sexual organ' was never alleged." ECF No. 1 at 15-16. As Respondent points out, in the ninth claim of his Rule 3.850 motion, Manson alleged IAC for "not motioning for judgment of acquittal challenging sufficiency of evidence." Ex. L at 31; *see* ECF No. 17 at 61. Specifically, in the Rule 3.850 motion, Manson asserted counsel should have moved for a judgment of acquittal (JOA) on the basis that the victim's testimony alone, without corroborating evidence, was "hearsay" and also required an impermissible stacking of inferences. Ex. L at 62; ECF No. 17 at 62. To the extent this is the same claim Manson wishes to raise here, he has exhausted it.

At the conclusion of the evidentiary hearing, the state post-conviction trial court denied the claim, making the following findings on the record:

> Ground 9, failure to move for judgment of acquittal. I accept his determination it would have been futile to ask for a j – judgment of acquittal. I agree, had a judgment of acquittal been requested, it would have clearly been denied. Mr. Manson does not seem to understand that there was sworn testimony against him. Whether he thinks it's true or not, is not the standard. That's up for a jury to determine. There was clearly sworn testimony as to each of – as to the allegation in the information. Therefore, a judgment of acquittal is not legally appropriate. Therefore, there was no ineffective assistance of counsel; nor any prejudice to Mr. Manson.

Ex. L at 440. The First DCA affirmed the case without an opinion, an

adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d). Ex. 23; *see* <u>Richter</u>, 562 U.S. at 99.  The record supports the state courts' determination.  *See* <u>Wilson</u>, 138 S. Ct. at 1192.

In particular, at the evidentiary hearing, defense counsel Ward testified, "I don't believe I had a good faith motion for a judgment of acquittal." Ex. L at 409.  He explained that was "[b]ecause there was evidence that – that met each of the elements for the offense."  *Id*.

Indeed, as counsel indicated and as the state post-conviction court found, the State presented sworn testimony in support of each element of the charged offense of capital sexual battery, contrary to section 794.011(2)(a), Florida Statutes (2001).  Ex. C at 69-70, 72-74, 83-85, 88.  As explained above, the amended information in this case charged that Manson "[o]n or about and between April, 2002 and June, 2002, did unlawfully commit a sexual battery upon [], a person less than twelve years of age, by putting his penis in her mouth, and the defendant was eighteen years of age or older, contrary to Section 794.011(2)(a), Florida Statutes."  Ex. L at 46.  That statute provides that "[a] person 18 years of age or older who commits sexual battery upon, or in an attempt to commit sexual battery injures the sexual organs of, a person less than 12 years of age commits a capital felony as provided in

ss. 775.082 and 921.141." *Id*.   As Respondent explains, pursuant to the statute, there are thus two ways to commit capital sexual battery:   (1) committing sexual battery on a child less than 12 by one who is 18 years of age or older; or (2) injuring the sexual organs of a child less than 12 by one who is 18 years of age or older in an attempt to commit sexual battery.   ECF No. 17 at 64.   In this case, the State charged Manson with the former.   Ex. L at 46.

Based on this record, it was not unreasonable for the state court to conclude that defense counsel's performance, in not moving for JOA, was not deficient.   The State presented sufficient evidence of each element of the charged crime.   Ex. C at 69-70, 72-74, 83-85, 88.   "Because conflicts in the evidence and the credibility of the witnesses have to be resolved by the jury, the granting of a motion for judgment of acquittal cannot be based on evidentiary conflict or witness credibility." <u>Sapp v. State</u>, 913 So. 2d 1220, 1223 (Fla. 4th DCA 2005); *accord* <u>Johnson v. State</u>, 247 So. 3d 689, 696 (Fla. 1st DCA 2018).   Thus, a JOA motion, if made in this case, would have been denied.   *See, e.g.*, <u>Beasley v. State</u>, 774 So. 2d 649, 657 (Fla. 2000) ("In moving for a judgment of acquittal, a defendant 'admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable

to the adverse party that a jury might fairly and reasonably infer from the evidence.'" (quoting <u>Lynch v. State</u>, 293 So. 2d 44, 45 (Fla. 1974))).

Petitioner Manson has not shown that the state court's rejection of this ground involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2). This ground should be denied.

### <u>Ground 10</u>: IAC – Jury Instruction

In his tenth ground, Petitioner Manson asserts his trial counsel provided ineffective assistance by not objecting "to the trial court's instruction," because when "[t]he judge erroneously instructs a jury that it may not request to have testimony read back," this "is 'error' that constitutes a 'structural defect' that prejudiced Manson by not being able to determine the effect without speculation." ECF No. 1 at 16. As both Manson, ECF No. 1 at 16-17, and Respondent point out, ECF No. 17 at 65, Manson did not raise this claim in the state court. Thus, this claim is not exhausted and is procedurally defaulted.

If considered on the merits, this ground should be denied. As Respondent indicates, the jury in this case did not request a "read-back" of trial testimony and the trial court did not instruct the jury that it could not do

so, contrary to Manson's allegations.   ECF No. 17 at 65-66; *see* Ex. D at 203-09.  *See also* Ex. D at 173-78, 200-03.

### Ground 11:  IAC – Giglio Violation

In his eleventh ground, Petitioner Manson asserts his trial counsel provided ineffective assistance by not objecting "to perjured testimony also known as 'Giglio Violation,'" pursuant to Giglio v. United Sates, 405 U.S. 150 (1972), and "[p]rejudice is found where [the] prosecution leads [the] star witness throughout testimony of farfetched fabrication of alleged acts that are not possible."  ECF No. 1 at 17.  As with Ground 10, supra, both Manson, ECF No. 1 at 16-17, and Respondent point out, ECF No. 17 at 66, that Manson did not raise this claim in the state court.  Thus, this claim is not exhausted and is procedurally defaulted.

If considered on the merits, this ground should be denied.   The Eleventh Circuit has explained:

> In Giglio v. United States, . . . , the Supreme Court held that when the prosecution solicits or fails to correct known false evidence, due process requires a new trial where "the false testimony could in any reasonable likelihood have affected the judgment of the jury."  405 U.S. at 154.  Giglio error, which "is a species of Brady error," exists "when 'the undisclosed evidence demonstrates that the prosecution's case included perjured testimony and that the prosecution knew or should have known, of the perjury.'" Ventura v. Att'y Gen., 419 F.3d 1269, 1276-77

(11th Cir. 2005) (quoting United States v. Agurs, 427 U.S. 97 . . . (1976)).

> "To establish a Giglio claim, a habeas petitioner must prove: (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material, i.e., that there is any reasonable likelihood that the false testimony could have affected the judgment."  Guzman v. Sec'y, Dep't of Corr., 663 F.3d 1336, 1348 (11th Cir. 2011).

Trepal v. Sec'y, Fla. Dep't of Corr., 684 F.3d 1088, 1107-08 (11th Cir. 2012). The Eleventh Circuit also explained that "[t]he Giglio materiality standard is 'different and more defense friendly' than the Brady materiality standard" as "for Brady violations, the defendant must show a reasonable probability that the result would have been different, but for Giglio violations, the defendant has the lighter burden of showing that there is any reasonable likelihood that the false testimony could have affected the jury's judgment."  Id. at 1108 (quoting United States v. Alzate, 47 F.3d 1103, 1109-10 (11th Cir. 1995)).

In addition, to prevail, a habeas petitioner "must show that a Giglio error resulted in 'actual prejudice' to him under the standard set forth in Brecht v. Abrahamson, 507 U.S. 619 . . . (1993)."  Id. at 1110.  Even if a petitioner shows testimony was false about some things, and even assuming that false testimony can be imputed to the prosecutor and was material under

<u>Giglio</u>, the petitioner must still show he suffered actual prejudice under

<u>Brecht</u>. *Id.* The Eleventh Circuit has explained:

> [T]he <u>Brecht</u> Court concluded that the appropriate harmless-error standard for habeas review of criminal convictions was whether the constitutional error "had substantial and injurious effect or influence in determining the jury's verdict." . . . Thus, to grant habeas relief based on constitutional trial error, the federal habeas court must find not only that the error occurred, but that it "resulted in 'actual prejudice'," that is, "the error had 'substantial and injurious effect or influence in determining the jury's verdict.'" The <u>Brecht</u> standard "is more favorable to and less onerous on the state, and thus less favorable to the defendant, than the <u>Chapman [v. California</u>, 386 U.S. 18 (1967),] harmless beyond a reasonable doubt standard."
>
> <u>Giglio</u> error is trial error, not a structural defect. Therefore, when considering a <u>Giglio</u> claim on federal habeas review, we can grant relief on that claim only if (1) the petitioner establishes that a <u>Giglio</u> error occurred, and (2) that error had "substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht</u>, 507 U.S. at 637.

*Id.* at 1111-12 (citations omitted). The court further explained that "a <u>Giglio</u>

error can be harmless under <u>Brecht</u> because the <u>Giglio</u> materiality standard

is lower than that of <u>Brecht</u>." *Id.* at 1113. Finally, "[b]ecause the <u>Brecht</u>

harmlessness standard is more strict from a habeas petitioner's perspective

than the <u>Giglio</u> materiality standard, federal courts confronted with colorable

<u>Giglio</u> claims in § 2254 petitions in many cases may choose to examine the

<u>Brecht</u> harmlessness issue first." *Id.* at 1113-14.

In this case, Manson does not indicate what testimony he alleges is false.  ECF No. 1 at 17.  Indeed, he offers no evidence or explanation to support his conclusory allegations.  *See id*.; *see also* ECF No. 18 at 36-37.  Given this, defense counsel cannot be found ineffective.  Accordingly, if considered on the merits, this ground should be denied.

## Conclusion

Petitioner Manson is not entitled to federal habeas relief.  It is **RECOMMENDED** that the § 2254 petition, ECF No. 1, be **DENIED**.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by filing objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## <u>Recommendation</u>

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1). It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**. The Clerk of Court shall substitute Ricky D. Dixon for Mark Inch as Respondent.

**IN CHAMBERS** at Tallahassee, Florida, on April 6, 2022.

S/ **Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.